IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| STARSTONE NATIONAL INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>AUMKAR INVESTMENTS, INC; ANTHONY MARQUEZ REID, INDIVIDUALLY, AND AS THE ADMINSTRATOR OF THE ESTATE OF ANTHONY MAURICE REID<br><br>  Defendants. | CIVIL ACTION NO. |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Starstone National Insurance Company ("Starstone") shows this Honorable Court the following:

### I.   Nature of Action

1.  This is a declaratory judgment action under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. Starstone seeks a declaration as to the legal rights, and other legal relations, surrounding questions of controversy that presently exist over whether it owes insurance coverage obligations to any of the Defendants in connection with the claims asserted in the lawsuit styled *Anthony Marquez Reid, Individually, and as The Administrator Of The Estate of*

*Anthony Maurice Reid v. Aumkar Investments, Inc. d/b/a Quality Inn & Suites*, State Court of Spalding County, Georgia, Civil Action File No. 22SV-226 ("Underlying Lawsuit").

2.  The Underlying Lawsuit is a wrongful death/premises liability lawsuit arising out of the death of Anthony Maurice Reid.

3.  In the Underlying Lawsuit, Anthony Marquez Reid seeks to recover damages for: the medical expenses incurred by Anthony Maurice Reid before he died; the pain and suffering experienced by Mr. Reid before his death; and damages equal to the value of Anthony Maurice Reid's life.

## II.  Parties, Jurisdiction and Venue

4.  Starstone is a Delaware corporation, which has its principal place of business in New Jersey.

5.  Anthony Marquez Reid is a Georgia citizen as he is an individual residing and domiciled in Georgia.

6.  Aumkar Investments, Inc., d/b/a Quality Inn & Suites ("Aumkar") is a Georgia citizen as it is a Georgia Corporation with its principal place of business located at 2014 North Expressway, Griffin, Georgia 30223. It may be served through its registered agent, Alpa Patel at 2014 North Expressway, Griffin, Georgia 30223.

7.      Consequently, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: 1) Plaintiff is a citizen of Delaware and New Jersey; 2) Defendants are all Georgia citizens; and 3) the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.      This Court also has jurisdiction pursuant to 28 U.S.C. § 2201, in that Starstone is seeking a declaration from this Court regarding the parties' rights and obligations with respect potential coverage under an insurance policy issued by Starstone.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all of the Defendants reside in Georgia and Aumkar resides in the United States District Court for the Northern District of Georgia.

### III.    Facts Relevant To This Declaratory Judgment Action
#### A. The Underlying Shooting And Lawsuit

10.     On August 5, 2022, Anthony Marquez Reid ("Marquez Reid"), individually and as the administrator of the Estate of Anthony Maurice Reid ("Maurice Reid"), filed a lawsuit against Aumkar Investments, Inc. d/b/a Quality Inn & Suites in the State Court of Spalding County for the State of Georgia.

11.     A true and correct copy of that Complaint is attached hereto as Exhibit A.

12. In his complaint, Marquez Reid asserts that his son was shot on August 31, 2020, while an invitee at Aumkar Investments, Inc., d/b/a Quality Inn & Suites, which is located at 2014 North Expressway in Griffin, Georgia.

13. In his complaint, Marquez Reid asserts that Aumkar Investments, Inc., owned, occupied and operated the premises located at 2014 North Expressway in Griffin, Georgia.

14. In his complaint, Marquez Reid asserts that Aumkar Investments, Inc. provided negligent security at 2014 North Expressway in Griffin, Georgia, which resulted in his son's death.

15. Aumkar Investments, Inc. had notice of the shooting on August 31, 2020.

16. Aumkar Investments, Inc. had notice of the Underlying Lawsuit on August 5, 2022.

17. Starstone first received notice of the shooting on September 20, 2022.

18. Starstone sent Aumkar Investments, Inc. a reservation of rights letter after receiving notice of the Underlying Lawsuit.

19. A true and accurate copy of the Starstone reservation of rights letter is attached hereto as Exhibit B.

## *The Western World Insurance Company Policy*

20. Aumkar Investments, Inc. is a named insured on a Commercial Lines Policy issued by Western World Insurance Company, Policy No. CPG1145998 with a policy period from February 3, 2020 to February 3, 2021 (the "Western World Policy").

21. A true and correct copy of the Western World Policy is attached as Exhibit C.

22. The Western World Policy provides the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
***
**2. Duties in The Event of Occurrence, Offense, Claim or Suit**

**a**. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)  How, when, and where the "occurrence" or offense took place:
(2)  The names and addresses of any injured persons and witnesses; and
(3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b**. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit."
(2) Authorize us to obtain records and any other information.
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may apply.

**2. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a**. To join us as a party or otherwise bring us into a 'suit' asking for damages from an insured; or
**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

***

[CG 00 01 12 07 (p. 10-11 of 16)].

23. The Western World Policy provides the following definition

### V. DEFINITIONS

[...]

**13. "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

6

24. Further, the Western World Policy provides the following exclusion:

**2. Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*<u>Starstone National Insurance Company's<br>
Following Form Excess Liability Policy</u>*

25. Starstone issued a Following Form Liability policy ("Policy"), with Policy Number 86025U200ALI to Aumkar Investments, Inc. as the Named Insured, for the policy period of March 10, 2020 to March 10, 2021.

26. A true and accurate copy of the Policy is attached hereto as <u>Exhibit D</u>.

27. The Policy's Insuring Agreement provides in part:

**SECTION I. - COVERAGE**

**A.** We will pay on behalf of the Insured the sums in excess of the Total Limits of Underlying Policies

shown in **Item 6.** of the Declarations that the Insured becomes legally obligated to pay as damages.

**B.** This Policy applies only to damages covered by the **Followed Policy** as shown in **Item 7.** of the Declarations. Except as otherwise provided by this Policy, the coverage follows the definitions, terms, conditions, limitations and exclusions of the **Followed Policy** in effect at the inception of this Policy.

**C.** This Policy applies only to damages arising out of any claim or of any occurrence likely to give rise to a claim, of which no **Responsible Insured** was aware prior to the Inception Date set forth in **Item 2.** of the Declarations, regardless of whether such **Responsible Insured** believed such claim or occurrence would involve this Policy.

**D.** Notwithstanding **A.**, **B.** and **C.** above, in no event will this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy**:

1. Liberalization clause;

2. Crisis Management or Crisis Response endorsement; or

3. Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

[...]

27. The Policy includes the following provisions:

    **SECTION II. - LIMITS OF LIABILITY**

**[...]**

**B.** The Limits of Liability of this Policy will apply as follows:

1. This Policy applies only in excess of the Total Limits of Underlying Policies shown in **Item 6.** of the Declarations.

**[...]**

7. This Policy will not apply in excess of any reduced or exhausted Limits of Underlying Policies to the extent such reduction or exhaustion is caused by payment of damages that are not covered under this Policy. This provision applies whether the lack of coverage under this Policy arises:

   a. From a difference between the terms, conditions, definitions and exclusions of this Policy and the **Underlying Policies**;

   or

   b. From injury or damage occurring outside the coverage period of this Policy.

28. The Policy conditions further provide:

**SECTION VI. – CONDITIONS**

**[...]**

### G. REQUIRED NOTICES TO INSURER BY INSURED

**1. Notice of Occurrence, Offense, Claim or Loss**

**[AS MODIFIED BY ENDORSEMENT CHANGES -- GEORGIA]**

**a.** In the event of an occurrence, offense, claim or suit, we or our representative must receive prompt notice of the occurrence, offense, claim or suit. Include:

**(1)** How, when and where the occurrence or offense occurred;
**(2)** The insured's name and address; and
**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the occurrence or offense, may be satisfied by an injured third party who, as the result of such occurrence or offense, has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

**[…]**

**2. Notice Regarding Material Change**

You shall give written notice to us of the following events as soon as practicable but in no event later than thirty (30) days after an Insured has become aware of the event: that the Named Insured is consolidating with or merging with or into, or transferring all or substantially all of its assets to, or acquiring or being

10

acquired by any natural person or entity or group of natural persons and/or entities acting in concert.

With respect to the Notice required in Paragraphs 1. and 2. of this Condition G., notice to an Underlying Insurer shall not constitute notice to us. Notice under this Policy shall be given to us at the appropriate address set forth in Item 9. of the Declarations of this Policy.

**[SSN EXS 0001 cw 03 16 p. 8 of 9]**

29. The Policy includes the following conditions:

**H. RESTRICTIVE AS UNDERLYING**

Notwithstanding any provision to the contrary in this Policy, including, without limitation, **SECTION I. – COVERAGE** of this Policy, if any **Underlying Policy** with limits in excess of the **Followed Policy** but underlying to this Policy (the "Intervening Policy") contains warranties, terms, conditions, exclusions or limitations more restrictive than the **Followed Policy**, whether on the effective date of this Policy or at any time during the Policy Period of this Policy, then this Policy shall be deemed to follow those more restrictive warranties, terms, conditions, exclusions or limitations of the Intervening Policy.

## IV. <u>Declaratory Judgment</u>

*Count I – Lack of Coverage*

30. Starstone seeks a declaration of rights that there is no coverage under its Policy for the claims asserted in the Underlying Lawsuit.

11

31. The Policy does not cover any of the claims made in the Underlying Lawsuit and will not cover any damages awarded therein, due to the failures of any insured to comply with the Starstone Policy's terms and conditions with respect to the occurrence of August 31, 2020.

32. Starstone was not notified promptly or as soon as practicable of the shooting, which at that time constituted an "occurrence" under the Policy or an offense which may have resulted in a claim.

33. Starstone did not receive written notice of the occurrence or claim promptly.

34. Starstone is entitled to a declaratory judgment that there is no coverage for the Underlying Lawsuit, because conditions precedent for the insured to be covered under the Policy were breached, including the duties to provide timely notice.

35. These duties to provide timely notice were part of the followed Policy issued by Western World, which were fully incorporated into the Starstone policy. To the extent these notice provisions were not met, Starstone is entitled to declaratory judgment that there is no coverage for the Underlying Lawsuit, because conditions precedent for the insured to be covered under the Policy were breached

36. The duties to provide timely notice were also part of the Starstone Policy. To the extent these notice provisions were not met, Starstone is entitled to declaratory judgment that there is no coverage for the Underlying Lawsuit, because conditions precedent for the insured to be covered under the Policy were breached.

37. Consequently, Starstone owes no duty to defend or indemnify under its Policy.

38. Starstone reserves, and explicitly does not waive, the right to raise any other coverage defenses that it may become aware of and assert them within this declaratory judgment action.

WHEREFORE, Plaintiff Starstone Insurance Company prays:

(a) That each Defendant be required to respond to the allegations set forth in this *Complaint for Declaratory Judgment*;

(b) That this Court declare that Starstone has no duty to cover or indemnify any of the Defendants for the August 31, 2020 occurrence giving rise to the Underlying Lawsuit, or any judgments or awards in that lawsuit;

(c) For such other relief as this Court deems just and proper.

This 19th day of January 2023

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **Bovis, Kyle, Burch & Medlin, LLC** |
| 200 Ashford Center North | /s/ Kim M. Jackson |
| Suite 500 | Ga. State Bar No. 387420 |
| Atlanta, Georgia  30338-2668 | /s/ Zachary S. Lewis |
| Tel:  (770) 391-9100 | Ga. State Bar No. 689146 |
| Fax: (770) 668-0878 |  |
| kjackson@boviskyle.com | *Counsel for Plaintiff* |
| zlewis@boviskyle.com |  |

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing **Complaint for Declaratory Judgment** has been prepared in 14 point size Times New Roman font, in accordance with L.R. 5.1

                                          Respectfully submitted,

                                          **Bovis, Kyle, Burch & Medlin, LLC**

| | |
|---|---|
| 200 Ashford Center North | /s/ Kim M. Jackson |
| Suite 500 | Ga. State Bar No. 387420 |
| Atlanta, Georgia  30338-2668 | /s/ Zachary S. Lewis |
| Tel:  (770) 391-9100 | Ga. State Bar No. 689146 |
| Fax: (770) 668-0878 | |
| kjackson@boviskyle.com | *Counsel for Plaintiff* |
| zlewis@boviskyle.com | |